**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ADA MARIE NORRIS,

    Plaintiff,

vs.　　　　　　　　　　　　　　　　　　　　　　CASE NO. 3:10-cv-724-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

**ORDER AND OPINION**

    This case is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for supplemental security income ("SSI"). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated November 9, 2011 (Doc. #23). The Commissioner has filed a transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).

    Upon review of the record, the Court has found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in making its determination. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

In the instant action, Plaintiff filed an application for social security income ("SSI") on March 24, 2006 with an alleged onset date of March 1, 2006. (Tr. 125). Plaintiff's application was denied initially on November 9, 2006, and upon reconsideration on May 4, 2007. (Tr. 81, 210-13). Plaintiff requested an administrative hearing, which was held on April 2, 2008 in Jacksonville, Florida. (Tr. 16). The administrative law judge ("ALJ") issued a decision denying Plaintiff's claim on May 23, 2008. (Tr. 16-24). Plaintiff filed a request for the review, which the Appeals Council denied on June 14, 2010. (Tr. 1-3). Plaintiff's current counsel of record, L. Albert Bacharach, Jr., filed the instant action in federal court on August 18, 2010 requesting the Court remand this case back to the Defendant Commissioner to examine the issues to be discussed below. (Doc. #1).

## II. BACKGROUND

### A. Summary of Evidence Before the ALJ

Plaintiff was born on August 13, 1957, and was fifty years of age at the time of the ALJ's decision. (Tr. 33). Plaintiff graduated from high school, attended approximately one year of college, and completed a cosmetology training program. (Tr. 33, 161-62). Plaintiff has past relevant work experience as a floor maintenance person and hair stylist. (Tr. 22, 33-34, 175-76, 184-85, 229, & 234). Plaintiff's medical history was discussed in the ALJ's decision and will be summarized herein.

#### i. Medical Evidence

The medical evidence contains records from Plaintiff's primary treating physician, Dr. Charles N. Bennett, from August 23, 2004 through May 4, 2007. Plaintiff visited Dr.

2

Bennett on August 23, 2004 complaining primarily of neck and back pain; Plaintiff stated she had been in the emergency room a few days prior due to the pain, and had been given muscle relaxant and analgesic medications (Tr. 247). Dr. Bennett advised Plaintiff to avoid unnecessary movement of the cervical spine and upper extremities; specifically, to avoid unnecessary pushing, pulling, and lifting. *Id.* In subsequent visits from August 31, 2004 to May 12, 2005, Dr. Bennett frequently noted the existence of the following conditions: hypertension, obesity, diabetes mellitus, muscle spasms, and recurrent right shoulder pain. (Tr. 237-246).

Dr. Bennett assessed "multiple joint disarthria" on August 31, 2004, October 12, 2004, October 27, 2005, December, 4, 2006, and September 28, 2006. (Tr. 243, 246, 365, 444, & 447). Dr. Bennett noted restrictions for both Plaintiff's left and right extremities and right shoulder on December 1, 2004, December 13, 2004, and March 16, 2005; specifically to avoid lifting heavy objects and any extraneous movement. (Tr. 239, 241, & 242). On May 12, 2005, Dr. Bennett assessed multiple joint inflammatory arthritis, and recommended Plaintiff discontinue repetitive hand movement activity, such as braiding hair. (Tr. 237). Dr. Bennett assessed arthritis in some capacity, aside from the shoulder, on August 30, 2005, February 17, 2005, and March 8, 2006. (Tr. 364, 366, & 367).

Plaintiff was admitted to the Emergency Department at Putnam Community Medical Center on May 22, 2005, and released May 27, 2005. (Tr. 252-271). Plaintiff complained of substernal chest pain and inability to urinate. (Tr. 258, 260). Dr. Richard Laubaugh's consultation at the emergency department noted tendinitis of the right shoulder and hypersensitivity to pain; as well as possible impingement syndrome of the right shoulder and possible fibromyalgia. (Tr. 256). A heart examination was performed on May 24,

2005, due to the complained chest pain and appeared normal overall. (Tr. 263-64).

On July 7, 2005, Dr. Lance Chodosh examined Plaintiff as part of her disability determination. (Tr. 272-84). Dr. Chodosh recorded Plaintiff stated she had a variable ability to perform daily living activities. (Tr. 272). Specifically, Plaintiff stated she could walk a few hundred feet, stand for ten minutes, stoop occasionally, lift about fifteen pounds, and drive. Plaintiff stated she could not squat, sit in one position for long periods of time, or lift overhead. *Id.* Dr. Chodosh noted the following clinical findings: Plaintiff had no deformity, tenderness, or paraspinal muscular spasm; normal standing balance; normal gait, other than a "slight waddling quality"; inability to squat and rise; significant obesity; complaint of joint pains, but no "definite signs of arthritis"; history of asthma, but no signs of asthma; diabetes under fair control, without complications; hypertension, under fair control, without complications; and mild depression. (Tr. 274-75). Based on the above findings, Dr. Chodosh found:

> The claimant is able to see, hear, and speak normally. She is able to walk moderate distances, but cannot walk extensively, and cannot stand continuously for more than 15 minutes. She can sit normally, but requires frequent changes of position. She is able to stoop occasionally, and can lift 15-20 pounds occasionally. She can carry only a few pounds occasionally and briefly. She cannot squat, kneel, or crawl. She is able to handle light objects occasionally. She is able to travel. She is able to comprehend and follow directions, and is able to relate normally to others.

(Tr. 275).

On July 7, 2005, a consulting state agency physician completed a Physical Residual Functional Capacity Assessment ("RFC") and found Plaintiff could: (1) occasionally lift or carry up to twenty pounds; (2) frequently lift or carry up to ten pounds; (3) stand or walk about six hours, with normal breaks, during an eight hour workday; (4) sit for a total of

4

about six hours, with normal breaks, during an eight hour workday; and (5) has an unlimited push or pull. (Tr. 288). Plaintiff is occasionally limited in her ability to: climb ramps and stairs; balance; stoop, kneel; crouch; and crawl. (Tr. 289). Plaintiff is "never" able to climb ladders, ropes, and scaffolds. *Id.* The medical consultant noted arthritis had been considered when assessing the exertional limitations, and that Plaintiff's symptoms were attributable to a medically determinable impairment. (Tr. 288, 292).

On August 16, 2005, Plaintiff was admitted to the Emergency Department of Putnam Community Medical Center for chronic flank pain. (Tr. 304). On August 23, 2005, Dr. Richard Laubaugh performed a consultative examination on Plaintiff. (Tr. 312-13). Dr. Laubaugh noted the following impressions: (1) degenerative disc disease of the cervical spine; (2) right shoulder pain, possible rotator cuff syndrome, possible impingement, possible rotator cuff tear, and/or possible fibromyalgia; and (3) DeQuervain's disease. (Tr. 313). Dr. Laubaugh noted he would like to try therapy, gave Plaintiff a prescription for Indocin, and considered injection or surgery if the latter did not help. *Id.*

Plaintiff was admitted to the Putnam Community Medical Center Emergency Department on September 5, 2005 for sinus pain and was given Nubain medication. (Tr. 295-302). On September 27, 2005, Plaintiff underwent a surgical procedure for release of the right first dorsal to correct a problem caused by right DeQuervain's disease. (Tr. 315). Surgeon Vidya Jain, M.D. noted Plaintiff had good circulation to the fingers and hand, and she was transferred to the recovery room in satisfactory condition. (Tr. 316).

On November 17, 2005, consulting state agency physician Dr. David Guttman completed a Physical Residual Functional Capacity Assessment and found Plaintiff could: (1) occasionally lift or carry up to twenty pounds; (2) frequently lift or carry up to ten

pounds; (3) stand or walk about six hours, with normal breaks, during an eight hour workday; (4) sit for a total of about six hours, with normal breaks, during an eight hour workday; and (5) has an unlimited push or pull. (Tr. 337). Plaintiff is occasionally limited in her ability to: climb ramps and stairs; balance; stoop, kneel; crouch; and crawl. (Tr. 338). Plaintiff is "never" able to climb ladders, ropes, and scaffolds. *Id.* Dr. Guttman found Plaintiff's symptoms were credible and consistent. (Tr. 341).

On May 11, 2006, Dr. Richard Laubaugh performed shoulder surgery on the Plaintiff to correct the following issues found through the preoperative diagnosis: impingement syndrome of the right shoulder, degenerative arthritis, and probable rotator cuff tear. (Tr. 373). Dr. Laubaugh stated the surgery went well, prescribed Plaintiff Percocet, and encouraged Plaintiff to do gentle passive motion exercises. (Tr. 375). Dr. Laubaugh noted in a follow-up examination on August, 13, 1957 that Plaintiff "looks like she is doing fairly well" and he would see her on an as needed basis. (Tr. 390).

On November 1, 2006, consulting state agency physician Dr. Todd Patterson completed a Physical Residual Functional Capacity Assessment and found Plaintiff could: (1) occasionally lift or carry up to twenty pounds; (2) frequently lift or carry up to ten pounds; (3) stand or walk about six hours, with normal breaks, during an eight hour workday; (4) sit for a total of about six hours, with normal breaks, during an eight hour workday; and (5) has an unlimited push or pull. (Tr. 398). Plaintiff is occasionally limited in her ability to: stoop, kneel; crouch; and crawl. (Tr. 399). Plaintiff is frequently able to climb ropes and stairs and balance. *Id.* Plaintiff is "never" able to climb ladders, ropes, and scaffolds. *Id.* Dr. Patterson found Plaintiff's symptoms were credible and consistent, and her RFC was reduced accordingly for arthritis and shoulder pain. (Tr. 402).       On April

30, 2007, consulting state agency physician Dr. Thomas Peele completed a Physical Residual Functional Capacity Assessment and found Plaintiff can: (1) occasionally lift or carry up to twenty pounds; (2) frequently lift or carry up to ten pounds; (3) stand or walk about six hours, with normal breaks, during an eight hour workday; (4) sit for a total of about six hours, with normal breaks, during an eight hour workday; and (5) has an unlimited push or pull. (Tr. 420). Plaintiff is occasionally limited in her ability to: climb ramps, stairs, ladders, ropes, and scaffolds; balance; stoop, kneel; crouch; and crawl. (Tr. 421). Dr. Peele noted Plaintiff's symptoms appeared partially credible and consistent, and her RFC was decreased accordingly. (Tr. 424).

### ii. Plaintiff's Testimony

Plaintiff testified before ALJ JoAnn Anderson on April 2, 2008. (Tr. 27). Plaintiff reported she initially became unable to work in 2003 because of asthma, tendinitis, and blood pressure issues, and was advised by her treating physician, Dr. Bennett, to cease working.[1] (Tr. 36). In response to the ALJ's question about the years Plaintiff did not work outside of her home, Plaintiff acknowledged she had been a drug addict, but at the time of the hearing was nineteen years sober. (Tr. 35). Plaintiff also recounted various short-term employments until 2004 when her shoulder pain, necessary surgery, and lower back pain caused her inability to work. (Tr. 38-39). Plaintiff further testified she had at one time tried looking for employment, but her medications caused her drowsiness. She also stated when she disclosed the amount of medications she took to employers, it appeared to deter them from hiring her. (Tr. 39).

---

[1] The records submitted by Dr. Bennett, beginning August 23, 2004, do not contain any such statement.

Plaintiff, via questioning from her attorney, testified about the following medical impairments. Plaintiff stated she had tendinitis in her right shoulder and had surgery that "somewhat" corrected the problem. (Tr. 41). Plaintiff claimed she still had "pain," numbness, and trouble lifting and carrying items. *Id.* Plaintiff also contributed numbness and trouble carrying items to tendinitis in her thumb. *Id.* Plaintiff claimed inflammation of her thumb occurs "every other day, maybe every two or three days." *Id.* Plaintiff also noted issues with blood pressure, which was "sometimes" under control with medication; diabetes, which for she took insulin, and had side effects that caused her to itch and generally not feel "good"; asthma, which caused coughing, wheezing, and sometimes shortness of breath for which she used an inhaler and medication; and lower back and knee pain, which made it difficult to stand and walk for long periods of time. (Tr. 40-46). The ALJ also questioned Plaintiff regarding her height and weight. (Tr. 50). Plaintiff stated she was five feet and seven and one-half inches and 301 pounds. *Id.* Plaintiff stated this had been her typical weight in the previous few years. *Id.*

Regarding her daily activities, Plaintiff stated she could: (1) lift about five pounds; (2) perform minor household straightening, but could not sweep or mop; (3) shower, dry, and dress herself, but was unable to take a bath;[2] (4) grocery shop while sitting in a motorized cart, and with the assistance of one of her daughters; (5) "sometimes" make her own meals, mostly meals that allowed her to rest intermittently while preparing them; and (6) drive, although she does not have a car. (Tr. 46-52). Plaintiff stated she could not fix her own hair. Plaintiff testified she mostly watched television, typically "nodding" off while doing

---

[2] Plaintiff testified that she could not bathe because of her inability to lift herself out of the bathtub. (Tr. 48).

8

so, and spoke with friends on the telephone or in person when they came to her home. (Tr. 53). Plaintiff stated she attended church every week with the transportation of a church member, and would occasionally go out to eat with her daughters. (Tr. 53). Plaintiff stated she enjoyed singing at church, but was unable to do any outside activities. (Tr. 51, 53).

### B. Summary of the ALJ's Decision

A plaintiff may be entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920;[3] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 416.972(a). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 416.925. Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 416.920(f). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national

---

[3] All references made to 20 C.F.R. will be to the 2011 edition unless otherwise specified.

economy, then she is disabled. 20 C.F.R. § 416.920(g).  A plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 21, 2006, the beginning of the time period under consideration.  (Tr. 16).  At step two, the ALJ found Plaintiff suffered from the following severe combination of impairments: diabetes mellitus, asthma, obesity, degenerative disc disease of the lumbar spine, status post right shoulder surgery, and status post surgery for the right DeQuervain's syndrome.  *Id.*  At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt.  404 Subpt. P, Appendix 1 (20 CFR §§ 416.920(d), 416.925, and 416.926).(Tr. 19).  At step four, the ALJ found Plaintiff retained the residual functional capacity ("RFC")

> to perform light work[4] . . . except [she] can occasionally balance, stoop, crawl, kneel, crouch, and climb.  She is to avoid any work at heights including the climbing of ladders or scaffolds. [She] should engage in no overhead work or overhead reaching.  She should avoid concentrated exposure to fumes, odors, dusts, and gases.

*Id.*  With this RFC, the ALJ found Plaintiff unable to perform her past relevant work as a floor cleaner and hairstylist.  (Tr. 22).  However, based on testimony from a Vocational Expert (VE), the ALJ determined there were a significant number of jobs in the national

---

[4] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. § 416.967(b).  A job in this category may still require a good deal of walking or standing, or it may involve sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*  To be considered capable of performing a full or wide range of light work, a plaintiff must have the ability to do substantially all of the aforementioned activities.  *Id.*

10

economy that Plaintiff could perform, including: (1) ticket seller, DOT 211.467-030; (2) furniture rental clerk, DOT 295.357-018; and (3) apparel stock checker, DOT 299.667-014. (Tr. 23). Therefore, the ALJ found that Plaintiff was not under a disability since March, 21, 2006, the alleged onset date. *Id.*

### III.  STANDARD OF REVIEW

A plaintiff is entitled to disability benefits if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months. 20 C.F.R. § 416.905. For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n.1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla - in other words, the evidence must do more than merely create a suspicion

of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court will not re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## IV.  ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff argues the ALJ failed to properly consider the combined effect of her obesity and other impairments, specifically Plaintiff's "multiple joint problems," as the equivalent to a medical listing pursuant to Social

Security Rule 02-01p ("SSR 02-01p"). (Doc. #18 at 9). Second, Plaintiff argues the ALJ failed to properly consider Plaintiff's obesity in evaluating her residual functional capacity pursuant to SSR-02-01p.

### A. Combination of Impairments

Plaintiff asserts the ALJ did not properly consider the combined effects of Plaintiff's obesity and multiple joint problems when evaluating her disability. Plaintiff specifically argues the ALJ failed to note Plaintiff's height and weight in her decision, and Plaintiff's "multiple joint inflammation arthritis/multiple joint disarthria." (Doc. #18 at 7). Plaintiff argues her height, weight, and joint problems, pursuant to SSR 02-01p, should have been found to be "the medical equivalence of a listing." *Id.*

If a claimant has multiple impairments, none of which meets or equals a listed impairment, the medical evidence of record will be reviewed to determine if the combination of impairments is medically equal to any listed impairment. 20 C.F.R. § 416.926(b)(3). When determining whether the combination of impairments is sufficient to render a claimant disabled, the ALJ will consider the combined effects of all claimants's impairments without regard to whether any such impairment, considered alone, would be of sufficient severity. 20 C.F.R. § 416.923. "The ALJ 'must make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.'" *Reliford v. Barnhart*, 157 Fed. App'x 194, 196 (11th Cir. 2005) (quoting *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (per curiam)).

In the instant case, the ALJ stated, "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 19). The ALJ noted she considered

the following listings: 1.00 (musculoskeletal system), including 1.04 (spine disorders); 3.00 (respiratory system); and 9.08 (diabetes mellitus).  *Id.*

The Eleventh Circuit has determined an ALJ's statement that a claimant's severe impairments, or combination of impairments, do not meet the listings can be taken as evidence that the combined effects of all impairments were considered.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (finding ALJ's statement that "[plaintiff] had several injuries which constitute a severe impairment, but . . . did not have an impairment *or combination of impairments*," showed ALJ had considered the combined effect of the plaintiff's impairments); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (finding ALJ's statement that "appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity" as evidence the ALJ reviewed the combination issue); *see also Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The ALJ explicitly stated that he considered the combination of [severe and non-severe] impairments. . . . The mere failure to discuss every single impairment under the step three analysis is not a procedural error.").

SSR 02-01p states obesity is considered a "medically determinable impairment" and should be considered when making a disability determination.  SSR 02-01p, 67 Fed. Reg. 57859-02, at *57861 (S.S.A. Sept. 12, 2002).  Prefaces were added to the musculoskeletal (1.00Q), respiratory (3.00I), and cardiovascular body system (4.00F) listings to advise how obesity could potentially contribute to the impairments of those body systems.  *Id.* However, SSR 02-01p "does not mandate a particular mode of analysis.  It only states that obesity, in combination  with other impairments 'may' increase the severity of the other limitations."  *Bledsoe*, 165 F. App'x 408 at 412.  Further, SSR 02-01p specifically states

assumptions will not be made regarding "the severity or functional effects of obesity combined with other impairments."  SSR 02-01p, 67 Fed. Reg. at *57862.  The burden is on the Plaintiff to present evidence and demonstrate the combined effects of their obesity and other impairments.

In the instant case, the ALJ specifically stated she considered all of Plaintiff's impairments, including obesity, in combination and found Plaintiff did not meet or equal a listing.  The ALJ also discussed relevant medical records, and made specific factual findings about the credibility of witnesses and expert reports.  These findings show the ALJ considered whether a combination of Plaintiff's impairments was medically equal to a listed impairment, and is supported by substantial evidence.

It is clear from the ALJ's decision that she considered Plaintiff's obesity and its effects with Plaintiff's other impairments, including her joint problems.  The ALJ noted "no treating physician has indicated the claimant had any significant limitation in her ability to perform routine movement and necessary physical activity within the work environment as a result of her obesity."  (Tr. 21).  Plaintiff seems to find error in the ALJ's failure to cite her height and weight.  However, it is not necessary for the ALJ to state Plaintiff's height and weight specifications, so long as she considered whether Plaintiff's obesity, combined with her other impairments, met a medical listing.

Pursuant to SSR 02-01p, it is the Plaintiff's burden to present evidence demonstrating how the combined effects of her joint problems and obesity affected the severity or functional effects of her other impairments, thereby making them equivalent to a medical listing.  SSR 02-01p, 67 Fed. Reg. at *57862.  In the instant case, Plaintiff makes

a conclusory statement that her "obesity and multiple joint problems should have been found to be the equivalent to a listing," without any further explanation. (*see* Doc. #18 at 7& 9). This is insufficient. *See Thomas v. Astrue*, No. 4:07-cv-128(CDL), 2008 WL 4831709, at *5 ( M.D. Ga. Nov. 4, 2008) (finding no error in ALJ's decision where plaintiff did not present "any evidence" that her obesity made her other impairments more severe so as to equal a medical listing). Further, Plaintiff does not identify which listing she allegedly meets. For presumptive disability under a listing, Plaintiff must show: (1) her impairments meet or medically equal all criteria of a specific listing and the duration requirement, and (2) any proffered medical evidence satisfies the criteria in the introduction of the listing. *See* 20 C.F.R. § 416.925(c)(1)-(5); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (stating a claimant "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement"); *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991) (claimant bears the burden to show that his impairments meet or equal a listing). Other than conclusory allegations, Plaintiff has not offered any evidence that her obesity made her other impairments more severe so that she met a medical listing. Accordingly, the ALJ did not err at step three of the evaluation process.

### B. Impact of Obesity on Ability to Work

Plaintiff argues the ALJ failed to properly consider the Plaintiff's obesity in evaluating her residual functional capacity ("RFC") as required by SSR 02-01p. (Doc. #18 at 7). SSR 02-01p provides that while obesity is no longer a listed impairment, its effects and combined effects with other impairments should be considered when evaluating a disability.

Specifically, obesity can cause limitations in the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling; also, obesity can affect the postural functions of climbing, balancing, stooping, and crouching. SSR 02-01p, 67 Fed. Reg. at *57862.

It is clear from the ALJ's decision that she considered the impact of Plaintiff's obesity, and specifically the requirements of SSR 02-01p, in finding Plaintiff not disabled. The ALJ found obesity a severe impairment at step two. (Tr. 18). At step three, the ALJ gave explicit consideration to the body systems typically seen to be impacted by a person's obesity. (Tr. 19). Next the ALJ found Plaintiff had the residual functioning capacity

> to perform light work . . . except [she] can occasionally balance, stoop, crawl, kneel, crouch, and climb. She is to avoid any work at heights including the climbing of ladders or scaffolds. [She] should engage in no overhead work or overhead reaching. She should avoid concentrated exposure to fumes, odors, dusts, and gases.

Id. Following her RFC determination, the ALJ specifically mentioned her consideration of the Plaintiff's obesity:

> [T]he undersigned has considered the effects of obesity when determining the residual functioning capacity of the claimant as set out herein. It is noted that no treating physician has indicated the claimant had any significant limitation in her ability to perform routine movement and necessary physical activity within the work environment as a result of her obesity. [T]he undersigned has included limitations against working at heights and climbing ladders and scaffolds in the claimant's residual functioning capacity as a result of her obesity.

(Tr. 21). *See Williams v. Astrue*, No. 2:11-cv-88-TFM, 2011 WL 6412224, at *9 (M.D. Ala. Dec. 21, 2011) (holding the ALJ had considered the plaintiff's obesity when the ALJ "specifically noted evidence of her obesity in the residual functional capacity assessment").

17

Further, the ALJ made specific reference to SSR 02-01p in her ruling. *See Castel v. Astrue*, 355 F. App'x 260, 263-64 (11th Cir. 2009) (rejecting claim that ALJ violated SSR 02-01p where the ALJ expressly referenced SSR 02-01p and obesity in the decision, included obesity as a severe impairment, and found that obesity did not result in any functional limitation beyond an RFC for medium work).

The Plaintiff also claims the ALJ's failure to evaluate Plaintiff's obesity in the RFC assessment is evidenced from comparing the one-time consultative examination performed by Dr. Lance Chodosh and the hypothetical posed by the ALJ to vocational expert, Robert Bradley. (Doc. #18 at 8). Dr. Chodosh found Plaintiff could not walk extensively, could not stand continuously for more than fifteen minutes, and required frequent changes of position when sitting. The ALJ gave limited weight to Dr. Chodosh's opinion because it was inconsistent with his clinical findings and with the record as a whole. (Tr. 22, 275). The ALJ noted Dr. Chodosh's findings indicated Plaintiff had normal standing balance, a gait with a "slight waddling quality" but was otherwise normal, and there were no "definite signs of arthritis." (Tr. 274-275). *See Williams*, 2011 WL 6412224, at *6 (holding the ALJ identified "good cause" to discount a doctor's opinion when the opinion was inconsistent with the Plaintiff's treatment and other medical records); *Maxena v. Barnhart*, No. 6:07-cv-211-Orl-19DAB, 2008 WL 686907, at *3 (M.D. Fla. Mar. 11, 2008) ("The ALJ may discount [a] physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.").

The medical record confirms the ALJ's assessment. Dr. Bennett, Plaintiff's treating physician, only noted limitations on hand movement and lifting (Tr. 237, 238, & 242) and

recommended Plaintiff avoid: lifting of heavy objects (Tr. 241); unnecessary movement of the cervical or lumbar spine and upper extremities (no pulling, pushing, and lifting) (Tr. 247, 359); and activities that aggravate the shoulder and back (Tr. 444 , 446).  Additionally, both residual functional assessments reflect the limitations found in Dr. Bennett's medical records – most notably the limitations for occasional balancing, stopping, kneeling, crouching, and crawling, as well as limited reaching.  (Ex. 19F & 21F).  Further, the ALJ's hypothetical takes into account occasional balancing, stopping, kneeling, crouching, and crawling; avoidance of climbing; and complete avoidance of overhead reaching with the upper extremities.  (Tr. 56).  Dr. Chodosh's limitations regarding the walking, sitting, and standing limitations, as the ALJ asserted, were inconsistent with the medical record.  Further, no treating physician ever noted or placed such limitations upon Plaintiff.

Additionally, a review of the evidence of record shows Plaintiff has done little more than suggest the ALJ should have speculated as to how her obesity limited her ability to participate in work-related activities.  SSR 02-01p provides that assumptions will not be made about "the severity or functional effects of obesity combined with other impairments." SSR 02-01p, 67 Fed. Reg. at *57862.  In *Maxena*, the Court held the ALJ properly considered the plaintiff's obesity in conjunction with the RFC finding, in part, when the plaintiff failed to "identify with specificity" the limitations arising from her obesity that the ALJ "allegedly overlooked."  *Maxena,* 2008 WL 686907, at *7; *see also Williams*, 2011 WL 6412224, at *8 ("To establish a disability, a claimant must show not only impairments, but functional limitations related to those impairments."); *Fabian v. Astrue*, No. 8:08-cv-1254-T-TGW, 2009 WL 3334783, at *4 (M.D. Fla. Sept. 18, 2009) ("[I]n order to demonstrate

reversible error with respect to obesity, the plaintiff must show that she had functional limitations from that condition that were not included in the law judge's determination of the plaintiff's residual functional capacity."). Here, Plaintiff failed to meet her burden of showing how her obesity affected her ability to work beyond the limitations considered by the ALJ.

## V. CONCLUSION

Upon due consideration, the undersigned finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of February, 2012.

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to: All counsel of record
and *Pro se* parties, if any